UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JESSE BREWER,

       Plaintiff,

 v.

C.O. CHRISTOPHER F. KAMAS, and
C.O. ROBERT G. HELD,

       Defendants.

**REPORT**
**and**
**RECOMMENDATION**

**05-CV-0376S(F)**

---

APPEARANCES:  JESSE BREWER, *Pro Se*
       01-A-6103
       Southport Correctional Facility
       Box 2000
       Pine City, New York 14871-2000

       ANDREW M. CUOMO
       Attorney General, State of New York
       MICHAEL A. SIRAGUSA
       Assistant Attorney General, of Counsel
       107 Delaware Avenue
       Fourth Floor
       Buffalo, New York 14202

## JURISDICTION

This case was referred to the undersigned by Honorable William M. Skretny on

October 25, 2007.  The matter is presently before the court on motions for summary

judgment filed by Plaintiff on January 9, 2007 (Doc. No. 22), and by Defendants on

February 5, 2007 (Doc. No. 26).

## BACKGROUND

Plaintiff Jesse Brewer ("Brewer" or "Plaintiff"), commenced this action pursuant to

42 U.S.C. § 1983, on May 31, 2005, alleging Defendants, New York State Department of Correctional Services ("DOCS") Corrections Officers ("C.O.") Christopher F. Kamas ("Kamas"), and Robert G. Held ("Held") (together, "Defendants"), violated Plaintiff's civil rights under the First, Eighth and Fourteenth Amendments.  Plaintiff specifically alleges that after filing numerous inmate grievances claiming that he had been assaulted by various prison staff members at Southport Correctional Facility ("Southport"), Defendants assaulted Plaintiff and filed false inmate misbehavior reports against Plaintiff in retaliation for Plaintiff's exercise of his First Amendment right to seek redress of grievances, and Eighth Amendment right to be free from cruel and unusual punishment.  Defendants' answer was filed on February 9, 2006 (Doc. No. 8).

On January 9, 2007, Plaintiff filed his motion for summary judgment (Doc. No. 22) ("Plaintiff's Motion").  In support of Plaintiff's Motion, Plaintiff filed on January 12, 2007, the Declaration in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Declaration") (Doc. No. 23), attached to which are Plaintiff's Brief in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Memorandum"), Plaintiff's Statement of Undisputed Facts ("Plaintiff's Undisputed Facts") and exhibits 1 and 2 ("Plaintiff's Exh(s). __").

On February 5, 2007, Defendants filed their motion for summary judgment (Doc. No. 26) ("Defendants' Motion").  The motion is supported by Defendants' Statement of Undisputed Facts In Support of Defendants' Motion for Summary Judgment (Doc. No. 27) ("Defendants' Statement of Facts"), the Declaration of Christopher F. Kamas (Doc. No. 28) ("Kamas Declaration"), with attached exhibits A through H ("Kamas Declaration Exh(s). __"), the Declaration of Robert G. Held (Doc. No. 29) ("Held Declaration"), with

2

attached exhibits A and B ("Held Declaration Exh(s). __"), the Declaration of Lance Inman (Doc. No. 30) ("Inman Declaration"), with attached exhibit A ("Inman Declaration Exh. A") and a Memorandum of Law (Doc. No. 31) ("Defendants' Memorandum").

In opposition to Plaintiff's Motion, Defendants filed on February 12, 2007, Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 32) ("Defendants' Response"), the Declaration of Christopher F. Kamas in Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 33) ("Kamas Response Declaration"), the Declaration of Robert G. Held in Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 34) ("Held Response Declaration"), the Declaration of Robert Brandt in Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 35) ("Brandt Declaration"), with attached exhibit A ("Brandt Declaration Exh. A"), and Defendants' Counter Statement of Undisputed Facts in Response to Plaintiff's Motion for Summary Judgment (Doc. No. 36) ("Defendants' Counter Statement of Facts").

On February 20, 2007, Plaintiff filed a Memorandum of Law in Opposition of Defendants' Motion for Summary Judgment (Doc. No. 39) ("Plaintiff's Response"), an Affidavit in Support to the Opposition of Defendants' Motion for Summary Judgment (Doc. No. 40) ("Plaintiff's Response Affidavit"), with attached exhibits A through D ("Plaintiff's Response Affidavit Exh(s). __"), and a Statement of Undisputed Facts in Opposition of Defendants' Motion for Summary Judgment (Doc. No. 41) ("Plaintiff's Opposing Statement of Facts").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's motion should be DENIED; Defendants' motion should be DENIED as to the excessive force claim and as to the retaliation claim based

on excessive force, and GRANTED as to the retaliation claim based on the issuance of a false misbehavior report; alternatively, Defendants' motion should be DENIED as to qualified immunity.

**FACTS**[1]

On May 24, 2002, Plaintiff, then incarcerated at Southport, was moved to A-Block, 2 Gallery, for a disciplinary infraction.  Plaintiff maintains that on May 25, 2002, following the move, he complained to Defendant Kamas that some items of Plaintiff's personal property, for which Kamas had been responsible, had not been brought to Plaintiff's new cell.  Upon hearing this complaint, Kamas allegedly became hostile toward Plaintiff and Plaintiff asked to speak with Sergeant Moriarty ("Sgt. Moriarty"), but Kamas denied the request.  On May 26, 2002, Plaintiff complained about Kamas to Sgt. Moriarty regarding the loss of Plaintiff's property who advised Plaintiff he would investigate the matter.

On May 30, 2002, Kamas issued an Inmate Misbehavior Report ("the First Misbehavior Report") charging Plaintiff with violating DOCS Rules 118.33 (flooding) and 106.10 (refusing a direct order).  In this report, Kamas maintains that on May 30, 2002, he observed Plaintiff flushing the toilet so as to cause it to overflow and flood the floors of the cell and the gallery, and that Plaintiff refused to obey Kamas's order to cease flushing the toilet, requiring Kamas to turn off the water to Plaintiff's cell.  In contrast, Plaintiff maintains that the overflowing toilet was located in another inmate's cell, but

---

[1] Taken from the pleadings and motion papers filed in this action.

that Kamas issued the misbehavior report against Plaintiff to retaliate against Plaintiff for complaining to Sgt. Moriarty on May 26, 2002, about Kamas losing Plaintiff's personal property on May 24, 2002.

On June 4, 2002, Plaintiff filed Inmate Grievance Nos. SPT 23924-02 ("Grievance No. 1), and SPT 23931-02 ("Grievance No. 2).  In Grievance No. 1, Plaintiff complained Kamas failed to comply with a Deprivation Order/Restraint Order issued to Plaintiff on May 24, 2002, directing Kamas to turn on the water supply to Plaintiff's cell. In Grievance No. 2, Plaintiff alleged that Kamas and Sgt. Moriarty were depriving inmates, including Plaintiff, of physical exercise, directing racial slurs toward inmates, and threatening to physically abuse Plaintiff.

A Tier II disciplinary hearing with respect to the First Misbehavior Report was originally scheduled for June 5, 2002.  When, however, Defendants Kamas and Held attempted to escort Plaintiff from his cell to the disciplinary hearing, a struggle ensued during which Defendants used force against Plaintiff.  According to Plaintiff, as Defendants applied mechanical restraints to Plaintiff's wrists, Kamas punched Plaintiff in the head, while Held pushed Plaintiff into the cell, where both Kamas and Held continued to punch Plaintiff in the back of his head, neck and back, kicked Plaintiff's buttocks, stepped on his legs and kneeled on Plaintiff's back.  Complaint ¶ 20.  Plaintiff further maintains that during the fracas, Kamas stated that the assault was in retaliation "for all of the grievances you filed on me." *Id*. ¶ 21.  Defendants, in contrast, assert that upon arriving at Plaintiff's cell to escort Plaintiff to the disciplinary hearing, Kamas applied wrist restraints, and then attempted to apply waist restraints, but Plaintiff "lifted his right foot and violently kicked C.O. Kamas in his right leg/shin."  Defendants'

Statement of Facts ¶ 13.  Defendants then placed Plaintiff "in a body hold face-down on his bed to prevent further kicking," and Plaintiff refused to obey several direct orders to cease resisting the corrections officers.  *Id.* ¶¶ 13-14.

After applying the mechanical restraints to Plaintiff, Defendants, assisted by C.O. Evans and C.O. Collins, escorted Plaintiff to A-3-1 shower where C.O. Root cut off Plaintiff's clothing with the trauma shears to permit Nurse Grim to check Plaintiff for any injuries resulting from the officers' use of force.  Plaintiff was then examined and photographed in accordance with DOCS procedures and Use of Force and Unusual Incident Reports were completed and filed in connection with the incident.  The portion of the Use of Force Report completed by Nurse Grim indicates that Plaintiff suffered an abrasion above his left eyebrow, but no other injuries, swelling or bruising was noted. Inman Declaration Exh. A.

Kamas then issued another Inmate Misbehavior Report ("the Second Misbehavior Report") charging Plaintiff with violating DOCS Rules 106.10 (Refusing a Direct Order), 107.10 (Interference), 102.10 (Threatening an Unhygenic Act), and 100.11 (Assault on Staff).  The Second Misbehavior Report was also signed by Held, endorsing Kamas's report of the incident.  Plaintiff objected to the Second Misbehavior Report by filing, on June 5, 2002, Inmate Grievance No. SPT 23958-02 ("Grievance No. 3"), alleging the assault was intended as retaliation against Plaintiff for filing grievances against Kamas and other correctional officers.

The Tier II disciplinary hearing with respect to the First Misbehavior Report, originally scheduled for June 5, 2006, was held on June 6, 2002.  Plaintiff refused to attend the hearing and the hearing officer, Lieutenant Donahue ("Lt. Donahue") found

6

Plaintiff guilty of both charges.

Meanwhile, Grievance No. 1 was investigated and, on June 6, 2002, the Inmate
Grievance Committee issued its decision, finding that Kamas was following DOCS
policy that "inmates with water deprivations are entitled to water twice during a shift,
with a total of ten minutes per shift."  Kamas Declaration ¶ 10 and Kamas Declaration
Exh. C.  Grievance No. 3 was forwarded to the Superintendent for his review and,
following an investigation, was denied on June 7, 2002, on the basis that the force used
on June 5, 2002, was proper and thus constituted the minimal amount required to
control the situation in accordance with applicable DOCS regulations.  Grievance No. 2
was investigated by an assigned Security Supervisor and, on June 25, 2002, having
found no evidence to support the claims asserted therein, was denied.

Plaintiff appealed the denial of Grievance No. 3 to the Central Office Review
Committee ("CORC"), which, on August 21, 2002, unanimously denied the appeal.
Kamas Declaration Exh. H.  This litigation followed.


## DISCUSSION

**1.     Summary Judgment**

Summary judgment of a claim or defense will be granted when a moving party
demonstrates that there are no genuine issues as to any material fact and that a moving
party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex
Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The party
moving for summary judgment bears the burden of establishing the nonexistence of any

genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment. *Celotex*, 477 U.S. at 322. Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). Furthermore, although summary judgment may be granted prior to completion of discovery, Rule 56(f) provides that, where it appears from the affidavits of the party opposing summary judgment that the party is unable to present, by affidavit, facts sufficient to avoid summary judgment, the court may either deny summary judgment, or order discovery necessary to obtain such facts.

Pursuant to § 1983, an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States. Infringement of a federal right must be alleged in asserting a §1983 civil rights claim. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). In particular, § 1983 provides, in pertinent part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"Section 1983 'is not itself a source of a substantive rights,' but merely provides 'a method for vindication of federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).   A civil rights action under 42 U.S.C. § 1983 requires the plaintiff establish the challenged conduct was committed by persons acting under color of state law and deprived plaintiffs of rights, privileges or immunities secured by the Constitution or laws of the United States.  *Adickes v. S.H. Kress & Co., Inc.*, 398 U.S. 144, 150-51 (1971).   Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed."  *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 394, (1989); and *Baker*, *supra*, at 140.)

In the instant case, Plaintiff alleges that while incarcerated at Southport, Defendants infringed Plaintiff's rights under the First, Eighth and Fourteenth Amendments.  Plaintiff specifically maintains that Kamas issued the First Misbehavior Report charging Plaintiff with flooding his cell, to retaliate against Plaintiff for complaining to Sgt. Moriarty on May 26, 2002 about Kamas's alleged loss of items of Plaintiff's personal property on May 24, 2002.  Complaint ¶¶ 7-14.  Plaintiff further alleges that on June 5, 2002, he suffered cruel and unusual punishment, in violation of the Eighth Amendment, when Defendants Held and Kamas, while escorting Plaintiff from his cell to the Tier II disciplinary hearing on the First Misbehavior Report, used excessive force against Plaintiff to retaliate against Plaintiff for complaining about Kamas.  Complaint ¶¶ 19-22.  Plaintiff moves for summary judgment on both his First and Eighth Amendment claims.

Defendants oppose Plaintiff's motion and move for summary judgment on the

ground that Plaintiff has failed to state a claim for retaliation given that even if Defendants were motivated to file the subject misbehavior report to retaliate against Plaintiff for filing the inmate grievance against Defendant Kamas, the record establishes legitimate non-retaliatory reasons for Kamas's filing the May 30, 2002 misbehavior report and for Held and Kamas's use of force to subdue Plaintiff on June 5, 2002 when attempting to remove Plaintiff from his cell.[2]  Defendants' Memorandum at 9-13; Defendants' Response at 11-15.  Defendants also maintain that the force used against Plaintiff on June 5, 2002 was *de minimus* and did not violate Plaintiff's Eighth Amendment right protecting Plaintiff from cruel and unusual punishment.  Defendants' Memorandum at 4-8; Defendants' Response at 4-11.  Alternatively, Defendants allege they are qualifiedly immune from liability as to both of Plaintiff's claims.  Defendants' Memorandum at 13-16; Defendants' Response at 16-19.

## 2.     Excessive Force

Defendants argue in support of summary judgment that despite Plaintiff's claims Complaint and the motion papers, there is a complete lack of any probative evidence supporting Plaintiff's assertion that on June 5, 2002, he was subjected to force in excess of what was reasonably necessary to subdue Plaintiff after Plaintiff refused to allow Defendants to apply mechanical restraints in preparation for escorting Plaintiff to the Tier II disciplinary hearing.  Defendants' Memorandum at 4-8; Defendants'

---

[2] Defendants do not dispute Plaintiff's assertion, Complaint ¶ 29, that all available administrative remedies relevant to Plaintiff's claims have been exhausted, as required under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a).  Further, because the "failure to exhaust is an affirmative defense," Defendants, by failing to assert failure to exhaust as an affirmative defense, have waived such defense. *Jones v. Bock*, __ U.S. __, 127 S.Ct. 910, 918 (2007).

Response at 4-11.  In support of Plaintiff's motion, Plaintiff submits a copy of a page from his Ambulatory Health Record dated June 5, 2002, establishing that following the incident, Plaintiff complained of injuries consistent with the alleged assault, including pain in his lower back, neck, left side of his face, ankles and wrists, and that Plaintiff was observed walking with a limp, favoring his right leg.  Plaintiff's Exh. E.

     In assessing an inmate's claims that prison officials subjected him to cruel and unusual punishment by using excessive force, courts must determine whether the prison officials acted "in a good-faith effort to maintain or restore prison discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). An inmate plaintiff claiming that prison officials subjected him to cruel and unusual punishment by use of excessive force must establish both an objective and subjective component of the claim.  *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). Objectively, a § 1983 plaintiff must establish that the alleged deprivation is sufficiently serious or harmful to reach constitutional dimensions.  *Romano*, 998 F.2d at 104; *see Wilson*, 501 U.S. at 296.  This objective component is "contextual and responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 9.  Thus, while a *de minimis* use of force will rarely suffice to state a constitutional claim, a plaintiff is not required to show that the application of force resulted in any serious injury.  *Id*. at 9-10.  Nor does an Eighth Amendment excessive force claim require any serious injury, and the use of any unnecessary force is considered excessive.  *Whitley*, 475 U.S. at 322  (use of force is objectively unreasonable where action was "taken in bad faith or for no legitimate purpose").  Rather, a prison official's malicious and sadistic use of force to cause harm, however, always violates contemporary standards of decency, regardless of whether

any significant injury is evident.  *Hudson*, 503 U.S. at 9 (citing Whitley, 475 U.S. 312,

327 (1986)).  "Otherwise, the Eighth Amendment would permit any physical

punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary

quantity of injury," a result as unacceptable to the drafters of the Eighth Amendment as

it is today.  *Id*. (citing *Estelle v. Gamble*, 429 U.S. 97, 102 (1976), and *Wilkerson v.*

*Utah*, 99 U.S. 130, 136 (1879)).

     *Hudson* is factually similar to the instant case insofar as the plaintiff inmate

brought a § 1983 action asserting the defendant prison officers subjected the plaintiff to

an unprovoked beating in violation of the Eighth Amendment's prohibition against use of

excessive force.  Following a bench trial held at which plaintiff's testimony was the sole

evidence presented in support of his claim, the judge credited the testimony of the

plaintiff, rejected the defendant prison officers' testimony and, despite the fact that the

plaintiff sustained only minor injuries as a result of the assault, entered judgment in

favor of the plaintiff.  *Hudson v. McMillian*, 929 F.2d 1014, 1015 (5th Cir. 1992).  On the

defendants' appeal, the Fifth Circuit found the plaintiff's minor injuries insufficient to

sustain a § 1983 claim and reversed the district court's judgment.  *Id*.  The Supreme

Court granted *certiorari* to determine whether the "significant injury" requirement applied

by the Fifth Circuit comported with the Eighth Amendment's ban against cruel and

unusual punishment, reversed the appellate court's decision and remanded the matter.

*Hudson*, 503 U.S. at 5, 12.  Upon remand, the Fifth Circuit found the district court's

finding consisting of a factual determination in resolving conflicting testimony provided

by the inmate plaintiff and the defendant prison officers, was amply supported by the

record, and held that because the evidence established defendant prison officers "used

force on plaintiff when there was no need to use any force at all," despite resulting in only minor injuries to the plaintiff, "the defendants' conduct can only be seen as motivated by malice, . . . that the force used against [Plaintiff] was unnecessary and excessive and was applied maliciously and sadistically for the very purpose of causing him harm." *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992) (bracketed material added).

In the instant case, despite Defendants' averments to the contrary, there exists a material issue of fact as to who initiated the use of force, that undisputedly occurred against Plaintiff, on June 5, 2002.  In particular, although Plaintiff averred that Defendants Held and Kamas intentionally and without any provocation, struck Plaintiff upon entering his cell to apply the mechanical restraints before escorting Plaintiff to the scheduled disciplinary hearing, Plaintiff's Declaration ¶¶ 5-6, Defendants maintain that after Defendants applied the waist chain, Plaintiff kicked backward with his right leg, striking Kamas in the right knee and shin.  Kamas Declaration ¶ 15; Kamas Response Declaration ¶ 7; Held Declaration ¶ 4; Held Response Declaration ¶ 8.  Defendants, however, fail to point to any evidence, aside from their own affidavits, negating Plaintiff's sworn insistence that the June 5, 2002 altercation was initiated by Defendants.[3]  The sharply contrasting versions of the encounter between Plaintiff and Defendants on June 5, 2002, thus create a material issue of fact as to the first prong of Plaintiff's excessive force claim, specifically, whether the use of any force to restrain Plaintiff on June 5,

---

[3] The court notes that no copy of Defendants' deposition of Plaintiff has been filed, indicating that Defendants did not depose Plaintiff.  *See* Local Rule of Civil Procedure 7.1(a)(1) (requiring that all discovery be filed in *pro se* case.  Such failure to depose Plaintiff implies Defendants believe Plaintiff is unlikely to deviate from his version of the incident.

2002 was objectively necessary. *Hudson*, 503 U.S. at 8-10.  The fact that Plaintiff's medical records are devoid of any evidence that Plaintiff suffered anything more than a *de minimus* injury in the June 5, 2002 incident is irrelevant to whether the use of any force was necessary. *Whitley*, 475 U.S. at 322.  Here, the evidence to be offered by Plaintiff, if believed at trial, is more than sufficient to demonstrate that the force in question was excessive. *Hudson*, 962 F.2d at 523.

Although the existence of a material issue of fact regarding the objective prong of an excessive force claim is sufficient to deny summary judgment, as the matter is before the undersigned for a report and recommendation, the subjective prong requirement for the claim is also considered.  Specifically, the subjective component of an Eighth Amendment excessive force claim requires that the defendants act maliciously and with the intent to harm the inmate plaintiff. *Hudson*, 503 U.S. at 7; *Romano*, 998 F.2d at 105.  To determine whether the defendants acted maliciously, the trier of fact will consider (1) the extent of the plaintiff's injuries; (2) the need for the application of force; (3) the correlation between the need for force and the amount of force used; (4) the threat reasonably perceived by the defendants; and (5) any efforts made by the defendants to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321. Here, it is undisputed that Plaintiff's injuries sustained as a result of the June 5, 2002 use of force were *de minimus*.  Nevertheless, as with the objective prong, whether Plaintiff was subjected to the use of any unnecessary force on June 5, 2002, when Defendants prepared to escort Plaintiff from his cell to escort Plaintiff to the scheduled disciplinary hearing turns on a critical disputed fact, that is, who initiated the alleged assault.  This unresolved factual issue as to the objective prong of Plaintiff's excessive

14

force claim is not only material, but also sufficient to preclude summary judgment as it also precludes the court from making any determination as to the second, third, fourth and fifth *Whitley* factors necessary to establish the claim's subjective element.

In other words, if Plaintiff provoked Defendants' use of force beyond application of the physical restraints, Defendant's subjective intent was more likely to subdue and control Plaintiff than to inflict punishment or pain.  Thus, a trier of fact's determination on the threshold question consistent with Defendants' version of the event is likely to result in a finding that Defendants' intent was not malicious, unless the force applied was so excessive as to be considered disproportiona,l and thus unreasonable, notwithstanding Plaintiff may have provoked Defendants.

Summary judgment on Plaintiff's excessive force claim arising from the June 5, 2004 incident should be DENIED.

### 3.    Retaliation

For a plaintiff to succeed in his retaliation claim, he must show that 1) the conduct cited as the cause for retaliation is protected; 2) the defendant took adverse action against the plaintiff; and 3) there was a causal connection between the protected conduct and the adverse action.  *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir.2003).  Courts are properly skeptical of prisoner retaliation claims as "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act."  *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

The filing of prisoner grievances is among the conduct protected by the First Amendment and thus actionable under § 1983. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995).  *See Smith v. Woods*, 2006 WL 1133247, at * 10 (N.D.N.Y. Apr. 24, 2006) (extending First Amendment protection to making of oral complaints to correctional officers), *aff'd*, 219 Fed. Appx. 110 (2d Cir. 2007).  In the instant case, Plaintiff alleges that he was subjected to the filing of a false misbehavior report and excessive force in retaliation for uttering verbal complaints and filing grievances against various prison officials, including Defendant Kamas, based on Plaintiff's belief that Kamas was responsible for the loss of Plaintiff's personal property.

### A.    False Disciplinary Charges

"An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a prison grievance, states a claim under § 1983."  *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (citing *Franco v. Kelly*, 854 F.2d 584, 589-90 (2d Cir. 1988)).  An inmate's verbal complaint to a correctional officer may also serve as the basis for a § 1983 retaliatory action.  *Smith*, 2006 WL 1133247, at * 10.  "A plaintiff alleging retaliatory punishment 'bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison official's decision to discipline the plaintiff.'"  *Gayle*, 313 F.3d at 682 (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).  Once the plaintiff's burden is satisfied, "[t]he burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation."  *Id*. (citing *Graham*, 83 F.3d at 80).

16

This burden can be met "by demonstrating that there is no dispute that the plaintiff 'committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report.'"  *Id*.  (quoting *Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir.) (*per curiam*), *cert. denied*, 525 U.S. 907 (1998)).  *See Lawrence v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994) (holding defendants met their burden where "it was undisputed that [the plaintiff] had in fact committed the prohibited conduct").

In the instant case, Plaintiff, by alleging that Defendant Kamas filed a false misbehavior report to retaliate against Plaintiff for the earlier inmate grievance against Kamas, made by complaining directly to Sgt. Moriarty on May 26, 2002, has sufficiently pleaded the first prong of a valid claim for retaliation in violation of the First Amendment given that the filing of an inmate grievance is protected by the First Amendment.  *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003) (filing of prison grievances is activity protected by the First Amendment); *Smith*, 2006 WL 1133247, at * 10 (same with regard to inmate's verbal complaint to correctional officer).  Nevertheless, on the record before the court, Plaintiff cannot avoid summary judgment on this claim because Plaintiff has failed to establish that the First Misbehavior Report, accusing Plaintiff of flooding his cell and refusing a direct order, was false so as to establish the minimal degree of requisite causal connection between Plaintiff's verbal complaint to Sgt. Moriarty and Kamas's issuance of the First and Second Misbehavior Reports.

In particular, Plaintiff's alleged retaliation claim based on the filing of false disciplinary charges by Kamas assumes, but does not establish, the prerequisite that the subject First Misbehavior Report's disciplinary charges were false.  *See Jones v. Coughlin*, 34 F.3d 677 at 679 (2d Cir. 1995) (vacating and remanding district court's

decision that inmate plaintiff's claim of retaliatory filing of false misbehavior report was wholly conclusory as based solely on adverse disciplinary decision where plaintiff, although provided a hearing on the disputed disciplinary charges, "was unfairly denied the right to call key witnesses in defense of the charges against him," and, thus, had no opportunity to prove charges were false, as required before the district court could consider whether filing of false charges was intended to retaliate against the plaintiff). The filing of a false misbehavior report does not constitute "a *per se* constitutional violation actionable under § 1983" provided the inmate is afforded due process protection through a disciplinary hearing on the misbehavior report. *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) ("prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest"), *cert. denied*, 485 U.S. 982 (1988). "The key inquiry in assessing an allegation that an inmate has been found guilty of false disciplinary charges is whether or not the prison has provided the inmate with the minimum procedural due process protections [to dispute a false or incorrect charge] guaranteed by the Fourteenth Amendment." *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988) (bracketed material added).  Summary judgment on a retaliation claim based on the filing of a false misbehavior report, however, is improper where an inmate either is not granted a hearing on the alleged false disciplinary charges, or is granted a disciplinary hearing, but is unfairly denied the right to rebut the charges by presenting evidence or calling witnesses in defense of the charges against him. *Jones*, 45 F.3d at 679.

In the instant case, Plaintiff does not deny that a disciplinary hearing was held,

notwithstanding his refusal to attend, with regard to the alleged false disciplinary charges, the validity of which Defendants adamantly maintain.  Kamas Declaration ¶¶ 5-6; Kamas Response Declaration ¶ 25.  In fact, the record establishes that the hearing was initially scheduled for June 5, 2002, but was rescheduled for June 6, 2002 after the altercation that ensued when Defendants attempted to escort Plaintiff to the hearing on June 5, 2002.  Although Plaintiff claims the charges contained in the First Misbehavior Report and adjudicated on the Tier II disciplinary hearing were false, Plaintiff neither denies that he refused to attend the disciplinary hearing on June 6, 2002, nor offers any explanation as to why he chose not to attend the hearing so as to rebut the charges, or why it was otherwise constitutionally deficient.  *Jones*, 45 F.3d at 679.  Nor does Plaintiff offer, either in support of Plaintiff's motion or in opposition to Defendants' motion, any evidence calling into question the truth of the First Misbehavior Report's charges.  As such, Plaintiff was provided with the requisite opportunity to rebut the alleged false disciplinary charges, as required by due process, *Franco*, 884 F.2d at 587, and Plaintiff, by failing to do so, has waived his right to further challenge the validity of the First Misbehavior Report in this action.  Plaintiff thus cannot establish a causal connection between the filing of his prison grievance, in the form of his complaint to Sgt. Moriarty about Kamas's loss of his personal property, and Kamas's issuing the First Misbehavior Report.

As such, the burden does not shift to Defendants to demonstrate that the plaintiff would have received the same punishment even absent any retaliatory motive.  *Gayle*, 313 F.3d at 682 (citing *Graham*, 83 F.3d at 80).  Summary judgment in favor of Defendants should be GRANTED on this claim.

19

**B.      Excessive Force**

As with Defendant's motion, Plaintiff's request for summary judgment is precluded insofar as Plaintiff alleges that on June 5, 2002, Defendants Held and Kamas used excessive force in retrieving Plaintiff from his cell to escort Plaintiff to the scheduled disciplinary hearing, based on the same material issue of fact precluding summary judgment on the excessive force claim as Defendants' request.  Discussion, *supra*, at 10-13.  In particular, the use of unnecessary force to retaliate against a plaintiff for engaging in protected activity constitutes unlawful retaliation.  *Davis*, 320 F.3d at 352.  Further, if Plaintiff can establish to a trier of fact that Defendants' undisputed use of force against Plaintiff on June 5, 2002 was unprovoked, given both the timing of the use of force on June 5, 2002, in relation to Plaintiff's May 30, 2002 verbal complaint to Sgt. Moriarty, as well as the June 4, 2002 filing of Grievances Nos. 1 and 2 against Kamas and other correctional officers, and that Kamas was one of the corrections officers sent to escort Plaintiff to the disciplinary hearing on June 5, 2002, Plaintiff could, through circumstantial evidence, establish the requisite causal connection between Plaintiff's verbal complaint and the filing of the prison grievances and the adverse action taken against him by Defendants, particularly Kamas.  *Colon*, 58 F.3d 872 (temporal proximity of filing of an alleged retaliatory inmate misbehavior report to filing of inmate grievance is circumstantial evidence of causal connection).

Summary judgment on this aspect of Plaintiff's retaliation claim should be DENIED.

**4.      Qualified Immunity**

Alternatively, Defendants argue they are qualifiedly immune from liability in the instant action.  Defendant's Memorandum at 13-16; Defendants' Response at 16-19. Plaintiff argues in opposition that Defendants are not qualifiedly immune from liability in the instant case because it was not objectively reasonable for Defendants to believe the actions of which Plaintiff accuses them did not violate Plaintiff's civil rights.  Plaintiff's Response at 12-13.

The doctrine of qualified immunity "shields a government official acting in an official capacity from suit for damages under § 1983 unless the official 'violated clearly established rights of which an objectively reasonable official would have known.'" *Blouin v. Spitzer*, 356 F.3d 348, 359 (2d Cir. 2004) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003)).  "The determination generally involves a two-step inquiry: do the facts alleged show the officer's conduct violated a constitutional right, and, if so, was the right in question clearly established?"  *Blouin, supra* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Here, the record before the court fails to establish that qualified immunity shields Defendants from the instant litigation.

In particular, the facts, as alleged in the Complaint and viewed in the light most favorable to Plaintiffs as required on summary judgment, *Rattner*, 930 F.2d at 209, support that Defendants violated Plaintiff's right to petition the government for redress of grievances by filing a false misbehavior report to retaliate against Plaintiff for filing an inmate grievance against Kamas, Complaint ¶¶ 8-15, as well as by using excessive force against Plaintiff on June 5, 2002, when attempting to remove Plaintiff from his cell to be escorted to the Tier II disciplinary hearing.  Complaint ¶¶ 19-22.  At the time of the alleged constitutional violations, Plaintiff's right to file an inmate grievance, including

verbal complaints to prison supervisors, without fear of retaliation was well established. *Davis*, 320 F.3d at 352-53 (filing of prison grievances is activity protected by the First Amendment).  Excessive use of force against inmates for any purpose regarding prison administration was equally well-established at the time of the alleged events in this case.  *See Hudson*, 503 U.S. at 7-8.  Moreover, on this record, the court finds that if the facts as alleged by Plaintiff are established at trial, no reasonable corrections officer could reasonably believe he was not violating Plaintiff's constitutional rights.  *Saucier*, 533 U.S. at 201.

As such, Defendants' summary judgment motion, insofar as it alternatively asserts the defense of qualified immunity, should be DENIED.

## **CONCLUSION**

Based on the foregoing, Plaintiff's motion for summary judgment (Doc. No. 22),

should be DENIED; Defendants' motion for summary judgment (Doc. No. 26), should be

DENIED as to the excessive force claim and the retaliation claim based on excessive

force, and GRANTED as to the retaliation claim based on the issuance of a false

misbehavior report; alternatively, Defendants' motion should be DENIED as to qualified

immunity.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:          January 9, 2008
               Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO

UNITED STATES MAGISTRATE JUDGE

DATED:        January 9, 2008

Buffalo, New York